WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Madeline Holandes,<br><br>            Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>            Defendant. | No. CV-13-00370-TUC-DTF<br><br>**ORDER** |

Plaintiff Madeline Holandes filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Holandes's Opening Brief, Defendant's Opposition to Holandes's Opening Brief, and Holandes's Reply. (Docs. 23, 25, 28.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record submitted to the Court, this matter is remanded for benefits.

**PROCEDURAL HISTORY**

Holandes filed an application for Disability Insurance Benefits (DIB) on November 20, 2008. (Administrative Record (AR) 290.) She alleged disability from January 4, 2003. (*Id.*) At a hearing, Holandes revised her onset date to January 25, 2007. (AR 70, 102.) Holandes's application was denied upon initial review (AR 197) and on reconsideration (AR 204). A hearing was held on August 3, 2010 (AR 96-172), after which ALJ George W. Reyes found that Holandes was not disabled (AR 180-88). The

Appeals Council remanded the case to the ALJ for further proceedings. (AR 194-95.) After a second hearing on February 13, 2012 (AR 36-95), the ALJ found Holandes not disabled at Step Four (AR 18-30). The Appeals Council denied Holandes's request to review that decision. (AR 1.)

**FACTUAL HISTORY**

Holandes was born on April 16, 1962, making her 46 years of age at the onset date of her alleged disability. (AR 159.) She had experience working at a bank, as a cashier, and as a correctional officer. (AR 308.)

Holandes stopped working in 2003, and was diagnosed by Dr. Jeffrey Loomer with fibromyalgia. In 2004, she underwent gastric bypass surgery and over time her fibroyalgia symptoms improved. However, the symptoms returned in 2006 and she began seeing Dr. Loomer again in 2007.

The ALJ concluded that Holandes had fibromyalgia but he determined she could perform light work with frequent balancing and stooping; occasional climbing of ramps/ stairs, kneeling, crouching or crawling; and never climbing ladders/ropes/scaffolds. (AR 25.) Based on vocational expert testimony, the ALJ concluded Holandes could perform her past relevant work as a bank teller. (AR 29.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983). To establish disability the claimant bears the burden of showing that (1) she is not working; (2) she has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) her RFC precludes her from performing her past relevant work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not

1  disabled" at any point in the five-step process, she does not proceed to the next step. 20
2  C.F.R. § 404.1520(a)(4).

3  "The ALJ is responsible for determining credibility, resolving conflicts in medical
4  testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
5  Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings
6  of the Commissioner are meant to be conclusive if supported by substantial evidence. 42
7  U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a
8  preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v.
9  Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to
10 deny benefits only "when the ALJ's findings are based on legal error or are not supported
11 by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033,
12 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must
13 resolve conflicts in the evidence, and if the evidence can support either outcome, the
14 court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019
15 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc.
16 Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision,
17 however, "cannot be affirmed simply by isolating a specific quantum of supporting
18 evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v.
19 Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence
20 that supports as well as detracts from the Commissioner's conclusion. *Day v.
21 Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

23 Holandes argues the ALJ committed four errors: (1) the ALJ improperly evaluated
24 the treating physician opinions and the medical evidence; (2) the ALJ erroneously
25 evaluated Holandes's credibility; (3) the ALJ failed to properly consider lay witness
26 testimony; and (4) the ALJ improperly disregarded the vocational expert's testimony. The
27 medical records span close to ten years and the ALJ emphasized that the period at issue is
28

the time between January 25, 2007, the alleged onset date, and June 30, 2008, the date Holandes was last insured.

**Treating Physicians**

Holandes argues the ALJ should have given more weight to her treating physicians, Drs. Loomer, Howard and Weiss. All three of these doctors opined that Holandes had limitations that would prevent her from sustaining work activity.

Contrary to the three treating physicians, consulting physician Martha Goodrich concluded that there was not a continuous 12-month period during which Holandes had fibromyalgia symptoms resulting in functional limitations. (AR 821.) Dr. Goodrich stated that Holandes's condition was "fairly episodic with long periods of muscle pain and weakness and long periods of normal activity." (*Id.*) Dr. Goodrich opined that Holandes could perform light work, with limitations to only occasionally climb stairs, kneel, crouch or crawl, and never climb ladders. (AR 821-22.) The ALJ gave this opinion substantial weight, finding it consistent with the evidence, and he adopted Dr. Goodrich's findings as Holandes's RFC. (AR 29.)

Generally, a treating physician's opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a nonexamining or reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). When there are contradictory medical opinions such as there are in this case, to reject a treating physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The Commissioner contends that Drs. Loomer's and Howard's opinions were provided after Holandes's date last insured. The ALJ did not rely on this fact to discount their opinions. Further, these doctors treated Holandes during the relevant time period and discussed that period in their opinions. The timing of these treating physician's opinions does not entitle them to less weight than that of Dr. Goodrich, which was based on a review of records a year after Holandes's last insured date. *Cf. Smith v. Bowen*, 849

- 4 -

1    F.2d 1222, 1225 (9th Cir. 1988) (collecting cases holding that evaluations conducted after
2    expiration of an insured's status are relevant to pre-expiration disability).

3    Dr. Loomer

4    Dr. Jeffrey Loomer, a rheumatologist, treated Holandes from January 2007 and
5    offered an opinion on her abilities on September 10, 2010. (AR 935-36.) Dr. Loomer
6    stated that Holandes's condition had deteriorated over time, with increased episodes of
7    depression, fatigue, muscle pain, and malaise, since January 2007. (AR 935.) He stated
8    that medication had been helpful at times for her sleep, but it left her groggy in the
9    morning and she continued to experience extreme daytime fatigue. (*Id.*) He noted that
10   Holandes had global muscle tenderness and pain, with multiple fibromyalgia tender
11   points. (*Id.*) Dr. Loomer opined that Holandes could not lift even ten pounds on a
12   repetitive basis, and should avoid bending, stooping and climbing. (*Id.*) He stated that her
13   symptoms are unpredictable, and on some days she would be capable of limited activity
14   but on other days she could do nothing; thus, he concluded she could not do sustained
15   activity. (AR 935-36.)

16   The ALJ declined to give controlling weight to Dr. Loomer's opinion because he
17   found that it was "too restrictive in light of the contemporaneous treatment notes." (AR
18   27.) The ALJ noted that Dr. Loomer precluded any repetitive lifting, but he found this
19   was inconsistent with her level of activity: in June 2007, she was exercising for an hour
20   when possible; in July 2007 she was responding positively to Lyrica and having less
21   fibromyalgia flares; and in February 2008, she was working out regularly and the
22   fibromyalgia was stable. (*Id.*) Further, she did not see a pain specialist until March 2010,
23   indicating that prior to that time Lyrica and antidepressants were sufficient. (*Id.*)

24   First, the Court looks at the ALJ's rationale that Holandes's level of activity was
25   inconsistent with Dr. Loomer's opinion regarding lifting. In June 2007, as noted by the
26   ALJ, Holandes wrote down on a form that she walked/jogged occasionally, for an hour
27   "when possible." (AR 496.) The doctor recorded that same day that her ability to exercise
28   was inhibited by her condition, she was sedentary, and she was not doing regular weight-

1  bearing exercises. (AR 521.) At that same appointment, her doctor noted that her energy
2  level had significantly decreased, she was fatigued, and her symptoms were not
3  controlled with current medication. (AR 520, 521.) In July, Holandes told a doctor that
4  she was having fewer fibromyalgia flares and her symptoms were controlled, as noted by
5  the ALJ, but at best her pain was a 3/10. (AR 511.) She was walking "some" for 10-15
6  minutes, but experienced chronic fatigue and napped every day. (AR 511, 909.) In
7  February, Holandes reported working out regularly and fibromyalgia was stable. (AR
8  506, 508.) In April, Dr. Loomer recorded increased achiness and significant fatigue, with
9  a desire to nap. (AR 907.) Similarly, in July 2008, Dr. Loomer noted fibromyalgia was
10 stable but she had excessive fatigue. (*Id.*)

11 The record does not indicate activity inconsistent with a strict limitation on lifting.
12 There is no evidence she regularly lifted anything significant. Exercise was recommended
13 by her doctors (AR 120, 512), however, Holandes exercised only inconsistently. The
14 record indicates "working out" involved walking short distances with her husband or on a
15 treadmill where she could hold on. (AR 54-55, 73-74.) Further, Holandes was often
16 incapacitated in the days after she exercised or did anything active. (AR 55, 67, 73, 82,
17 112-13.) She and her husband both reported that he did all of the household chores (AR
18 146, 148-49, 342, 359), and there is no evidence to the contrary. Her activities of daily
19 living were minimal, she showered only once a week, almost never socialized, and spent
20 most of her day in the recliner chair. (AR 76-80, 114-19, 148-49, 340-41, 344, 358.) Even
21 when Holandes's fibromyalgia was stable, treatment notes indicate she experienced pain
22 and extreme fatigue.

23 Second, the ALJ discounted Dr. Loomer's opinion because Holandes was
24 successfully treated with Lyrica and antidepressants until March 2010. The record
25 supports the ALJ's finding that prior to that time, Lyrica and other medications were
26 generally "controlling" her pain and limiting her fibromyalgia flares. However, that does
27 not undermine Dr. Loomer's opinion about her limitations in 2007 and 2008. During that
28 time, Holandes still experienced flares and as opined by the doctors suffered from

excessive fatigue. Dr. Loomer indicated that fatigue impeded her ability to work. Additionally, Holandes's stability was based on a very inactive lifestyle. A short walk or other activity could cause days of pain. The fact that Holandes reported an increase in pain and depression beginning in November 2009 (AR 851), does not establish that her symptoms prior to that time were not disabling.

The ALJ failed to provide specific, legitimate reasons for discounting Dr. Loomer's opinion.

### Drs. Howard and Weiss

On April 7, 2009, Holandes's primary care physician Dr. Paul Howard stated that she had fibromyalgia and her condition had deteriorated since January 2008. (AR 798.) Dr. Howard stated that Holandes took medication that allowed her to conduct activities of daily living but not any vocational activity. (*Id.*) He noted that as a side effect to the medications, she experienced dizziness, fatigue and blurry vision, which precluded her from doing sustained activity. (*Id.*) He remarked that she could not work because her condition was unpredictable. (*Id.*) He stated that Holandes was limited in her ability to do any lifting, bending, stooping, crawling or climbing. (*Id.*) On October 6, 2010, Holandes's new primary care physician, Dr. Vasanta Weiss, stated that she agreed with the opinion provided by Dr. Howard. (AR 937.)

The ALJ gave limited weight to Dr. Howard's opinion finding it vague and based on subjective complaints and reports of side effects, with no functional testing. (AR 27.) The ALJ also found that Dr. Howard's opinion was contradicted by his October 2007 clearance for Holandes to have plastic surgery. (*Id.*) Dr. Howard stated at that time that Holandes was free of symptoms that would preclude surgery and her physical exam was within normal limits. (*Id.*) The ALJ also noted that Dr. Howard's records indicated that, in February 2008, Holandes was back at the gym and was not having any depression. (AR 28.) The ALJ gave limited weight to Dr. Weiss because she had only seen Holandes once and merely agreed with Dr. Howard. (*Id.*)

1   The ALJ did not support his finding that Dr. Howard's opinion was "vague." Dr. Howard provided a diagnosis, identified medication side effects and specified functional limitations. Fibromyalgia is diagnosed based on the patient's identification of symptoms, not on any confirmable testing. *See Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Therefore, Dr. Howard was obligated to rely upon Holandes's self-reporting. The ALJ did not identify any functional testing that Dr. Howard might have done to more accurately quantify Holandes's limitations. It is error to require objective evidence for fibromyalgia because it cannot be measured in those terms. *Id.* at 594.

There is no evident contradiction between Dr. Howard's opinion on Holandes's limitations and his clearance for her to have surgery in October 2007. Dr. Howard ran an ECG, CBC and CMP, none of which were contraindicative for surgery. (AR 583.) The ALJ fails to articulate any reason why fibromyalgia would negatively impact Holandes's heart or blood levels, such that surgery would be precluded. Dr. Howard did note for the surgeon Holandes's diagnosis of fibromyalgia and her current medications. (*Id.*) The ALJ failed to explain why surgical clearance contradicted Dr. Howard's opinion that Holandes could not perform sustained activity, and the connection is not obvious to the Court.

As identified by the ALJ, Dr. Howard's February 2008 record indicated Holandes's fibromyalgia was stable. (AR 508.) However, the other records from before and after this period, indicate Holandes was experiencing significant fatigue. (AR 511, 520, 907, 909-10.) SSR 12-2p, which covers evaluation of fibromyalgia, provides that the agency will "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" When the full record is examined, it is evident that even when Holandes's fibromyalgia was considered stable, she had significant fatigue and periodic flares. The ALJ failed to provide specific, legitimate reasons for rejecting Dr. Howard's opinion.

The ALJ's rejection of Dr. Weiss's opinion was based on a specific, legitimate reason supported by substantial evidence. The record demonstrates that Dr. Weiss first saw Holandes in late 2010, more than two years after the expiration of her insured status.

1  She did not offer a retrospective opinion on Holandes's functionality during the relevant
2  time period, and she had only one visit with her before providing an opinion.
3  Additionally, in merely agreeing with Dr. Howard, the opinion does not carry
4  independent weight.

<u>Conclusion and Substantial Evidence</u>

The ALJ's rejection of the opinions of Drs. Howard and Loomer was not supported by specific legitimate reasons or substantial evidence. After rejecting all of the treating doctors, the ALJ gave substantial weight to a non-examining physician, Dr. Goodrich. A nonexamining physician's opinion is, without more, not substantial evidence to reject the opinion of a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). When weighing a non-examining physician's opinion, the ALJ should evaluate how much of the record Dr. Goodrich considered, including whether she reviewed the opinions of treating physicians. 20 C.F.R. § 1527(c)(3). There is no documentation regarding what records Dr. Goodrich reviewed before issuing her July 2009 opinion. Dr. Howard issued his opinion several months before, in April 2009; however, it appears this was not considered by Dr. Goodrich. When discussing medical source statements, she cited only a 2003 opinion by Dr. Loomer. (AR 826.)

Dr. Goodrich opined that Holandes's impairment was episodic, therefore, she concluded Holandes did not experience a 12-month period of functional limitations. However, she found that Holandes experienced "long periods of muscle pain and weakness," (interspersed with periods of normal activity) and could do light activity "during the majority of the . . . claim period." (AR 821.) The Commissioner's role is to assess whether a claimant can work on a "sustained basis," 20 C.F.R. §§ 404.1512(a), and "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester*, 81 F.3d at 833. The ALJ did not reconcile how Holandes could work if, during a 12-month interval, she had substantive periods of time

1 when her symptoms were exacerbated and she could not do even light activity. The ALJ
2 erred in his rejection of the opinions of Drs. Loomer and Howard.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true treating physician opinions that were improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit recently clarified that application of the credit as true rule is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

As discussed above, factor one is satisfied because the ALJ failed to provide adequate reasons for rejecting the opinions of Drs. Loomer and Howard. Because the vocational expert testified regarding the limitations found by Drs. Howard and Loomer, there are no outstanding issues requiring further proceedings. In applying factor three, the Court credits as true the doctors' opinions on Holandes's functional limitations not their opinion that she was wholly unable to work. The treating doctors opined that Holandes experienced dizziness, extreme daytime fatigue and blurry vision, could not lift any weight on a regular basis, and could do no sustained activity because she could not predict the days when she would be unable to go to work. (AR 798, 935-36.)

1    The vocational expert testified that a person could not perform any competitive work if she could not stay on-task for two hours at a time, would have more than 12 absences in a year, or could not lift 10 pounds repetitively. (AR 91-93.) Holandes's treating doctors determined that she was limited in ways that the vocational expert testified would preclude work. In light of her extreme fatigue, dizziness and unpredictable ability to attend work, she would be unable to stay on task or not miss more than 12 days of work. Additionally, the doctors found her unable to lift any weight repeatedly. Thus, based on the testimony of the vocational expert called by the ALJ, it is clear the ALJ would find Holandes disabled if the treating physicians' opinions were credited as true.

Under the circumstances of this case, application of the credit as true rule is mandatory and directs a finding that Holandes is disabled. Because the Court finds Holandes entitled to an award of benefits based on the ALJ's error in his weighing of the treating doctor's opinions, it does not consider Holandes's other claims.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** for an award of benefits. The Clerk of Court should enter judgment and close this case.

Dated this 3rd day of November, 2014.

_____
D. Thomas Ferraro
United States Magistrate Judge